IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| DARA AVJIAN, a minor,<br>by her parents and next friends,<br>Susan and Robert Avjian,<br>6 Parsippany Court,<br>North Potomac, Maryland 20878,<br><br>and<br><br>SUSAN AND ROBERT AVJIAN,<br>6 Parsippany Court,<br>North Potomac, Maryland 20878,<br><br>        Plaintiffs,<br><br>          v.<br><br>JERRY D. WEAST (officially as),   Superintendent,<br>Montgomery County Public Schools,<br>850 Hungerford Drive,<br>Rockville, MD 20850,<br><br>and<br><br>MONTGOMERY COUNTY BOARD OF<br>EDUCATION,<br>850 Hungerford Drive,<br>Rockville, MD 20850,<br><br>        Defendants. | Civil Action No. _____ |

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

**Jurisdiction**

1.   This Court has jurisdiction over this matter pursuant to the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. §§ 1400 *et seq.*; the Rehabilitation Act of 1973 ("Section 504"), 29 U.S.C. § 794;  42 U.S.C. § 1983 ("Section 1983"); and 28 U.S.C. §§ 1331 and 1343.  Declaratory relief is authorized by 28 U.S.C. §§ 2201 and 2202.  This court has

pendent jurisdiction pursuant to MD. CODE ANN. EDUC. § 8-401 *et seq.*, (1996). Plaintiffs have exhausted their administrative remedies and appeal to this court from a decision of an Administrative Law Judge ("ALJ") of the Maryland Office of Administrative Hearings, MSDE-MONT-OT-200300086 (July 1, 2003).

## Parties

2.  Dara Avjian ("Dara") is a significantly educationally-disabled student, eligible to receive special education and related services, who at all times relevant to this action resided in Montgomery County, Maryland. Her parents, Susan and Robert Avjian ("the Avjians"), bring this action on Dara's behalf and in their own right.

3.  Jerry D. Weast is the Superintendent of the Montgomery County Public Schools ("MCPS" or "the school system") and, as such, is the public official charged with the responsibility for ensuring that MCPS complies with federal law as to the education of disabled children. He is sued in his official capacity.

4.  The Montgomery County Board of Education is a local educational agency as defined by 20 U.S.C. § 1401, and, as such, receives financial assistance from the United States Department of Education. The Montgomery County Board of Education is responsible for complying with federal law with respect to the provision of a FAPE to each disabled child in Montgomery County.

## Factual Allegations

5.  Dara Avjian was born on January 1, 1989.

6.  Dara has multiple and significant disabilities including serious emotional disturbance and specific learning disabilities that adversely impact her total educational

2

experience. These disabilities entitle her to receive special education and related services under the IDEA.

7.      Defendants have identified Dara as eligible to receive special education services delivered through an Individualized Education Program ("IEP").

8.      On July 26, 2002, defendants met with the Avjians at a Central IEP meeting to determine an IEP and placement for Dara for the 2002-2003 school year.

9.      At the July 26th meeting with defendants, the Avjians asked that Dara be placed in a therapeutic, residential school which they considered to be the only type of placement that could possibly meet their daughter's extreme needs.

10.     At the July 26th meeting with defendants, the Avjians also brought Dr. Susan Dye, a clinical psychologist who had been working with Dara, to state her expert opinion as to Dara's educational needs. Dr. Dye confirmed that a therapeutic, residential school was the only type of placement that in her opinion could meet Dara's needs.

11.     Defendants responded to the Avjians and Dr. Dye at the July 26th meeting by stating one thing and then writing another; they agreed to refer Dara to the Regional Institute for Children and Adolescents ("RICA") for consideration of a residential program, but then wrote on her IEP that her needs could be met in a day-only program.

12.     Defendants explained at the July 26th meeting that only the staff at RICA could determine whether Dara needed the residential services offered at RICA and that that was the reason a referral was being made for consideration.

13. During the discussion at the July 26th meeting with defendants, school system staff gave the Avjians and Dr. Dye the impression that they supported Dara's residential placement at RICA.

14. Defendants never identified an appropriate day-only program that could meet Dara's significant needs.

15. Defendants never stated or even suggested to the Avjians during the July 26th meeting that, should Dara be placed in the residential program at RICA, the parents may be liable for all or part of the cost of the placement.

16. Cooperating with defendants, the Avjians interviewed with Dara at RICA, where she was accepted and admitted as a residential student for the 2002-2003 school year.

17. Dara attended the residential program at RICA during the 2002-2003 school year and received educational benefit there.

18. Upon Dara's admission into the residential program at RICA, the Avjians were not told that they might be responsible for all or part of the cost of that program, although they were asked to fill out a financial statement.

19. A few months after Dara had begun the residential program at RICA, the Avjians were advised that they were being held responsible for the cost of Dara's residential programming at a cost of $571.00 per day.

20. The Avjians immediately disputed the charges attributed to them by stating that they understood that Dara had been placed at RICA as part of the provision of a free public education under the IDEA and that neither defendants nor staff at RICA had advised them of these charges previously.

4

21. When the charges were not removed, the Avjians filed for a Due Process Hearing under the IDEA on March 10, 2003. A Due Process Hearing was held pursuant to that request on June 3 and 10, 2003, with a decision issuing on July 1, 2003.

22. The administrative decision, which found that the Avjians were responsible for the costs of the RICA residential program, contains palpable errors of fact, law, and equity.

23. The administrative ruling is inequitable in its failing to credit the Avjians and Dr. Dye's testimony, both as to Dara's educational need for a residential program and the absence of any notice as to parental responsibility for the cost of the proposed program.

24. The ALJ acted improperly and inequitably in failing to recognize that defendants intentionally or negligently failed to advise the Avjians of the potential for financial responsibility of Dara's placement at RICA.

25 The ALJ acted improperly and inequitably in failing to recognize that Dara required a residential placement for educational reasons and that, therefore, the Avjians could be responsible even in part for her educational placement under the IDEA.

26. Plaintiffs are aggrieved by the decision of the ALJ.

27. Plaintiffs have exhausted their administrative remedies.

## COUNT I

28. Plaintiffs incorporate as though restated each of the factual allegations stated in paragraphs 1 through 27.

29. Defendants' failure to provide Dara Avjian with a free appropriate public education violates plaintiff's rights under the IDEA, Section 504, Section 1983, and Maryland law.

## COUNT II

30.    Plaintiffs incorporate as though restated each of the factual allegations stated in paragraphs 1 through 27.

31.    The failure of the ALJ to order defendants to fully fund Dara Avjian's residential placement at RICA violates the IDEA and Maryland Law.

## COUNT III

32.    Plaintiffs incorporate as though restated each of the factual allegations stated in paragraphs 1 through 27.

33.    The ALJ committed error, and violated plaintiffs' due process rights under the IDEA and Maryland law by failing to consider relevant, probative and admissible evidence offered by the parents.

## COUNT IV

34.    Plaintiffs incorporate as though restated each of the factual allegations stated in paragraphs 1 through 27.

35.    The failure of defendants to provide plaintiffs with adequate due process procedures violates the IDEA, Section 504, Section 1983, and Maryland law.

## COUNT V

36.    Plaintiffs incorporate as though restated each of the factual allegations stated in paragraphs 1 through 27.

37.    The ALJ committed error, and violated plaintiffs' due process rights under the IDEA and Maryland law, by failing to render a proper decision on all substantive issues offered by the plaintiffs.

WHEREFORE, plaintiffs respectfully request that this Court:

1.    Issue judgment for plaintiffs and against defendants;

2. Issue declaratory relief that defendants violated plaintiffs' rights under applicable law;

3. Issue injunctive relief, reversing the decision of the ALJ;

4. Issue injunctive relief ordering defendants to fully fund Dara Avjian's placement at RICA for her entire enrollment at that school;

5. Order defendants to pay plaintiffs' reasonable attorneys' fees and costs, including the fees and costs of this action; and

6. Award any other relief that this Court deems just.

Respectfully Submitted,

_____
Michael J. Eig       #07718

_____
Haylie M. Iseman       #14782
MICHAEL J. EIG AND ASSOCIATES, P.C.
5454 Wisconsin Avenue
Suite 760
Chevy Chase, Maryland 20815
(301) 657-1740

Counsel for Plaintiffs